IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTHONY S. CHANNELL,                )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        CASE NO. 2:18-cv-1059-JTA
                                    )           (WO)
KILOLO KIJAKAZI,                    )
Acting Commissioner of Social Security,[1] )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Anthony Channell, brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 9.)[2]  The Commissioner denied Channell's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  (*Id.*)  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Docs. No. 14, 15.)

Based upon review of the record and the briefs submitted by the parties, the Court finds that the Commissioner's decision is due to be REVERSED and that this matter be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.

[2] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.     PROCEDURAL HISTORY AND FACTS

Anthony Channell ("Channell") was born on September 22, 1986 and was 31 years old at the time of the administrative hearing held on October 18, 2017.  (R. 33.)[3]  He has a GED and previously worked as a forklift operator and maintenance mechanic at an industrial forklift dealer company.  (R. 42.)  Channell alleges a disability onset date of March 22, 2016, due to a right foot crush injury, as well as degenerative disc disease of the lower lumbar spine, reflex sympathy disc dystrophy of the lower limb, gouty arthritis, high blood pressure, morbid obesity, depression, and medication side effects.  (R. 16-18, 37.)

On March 29, 2016, Channell applied for a period of disability, DIB and SSI under Title II (42 U.S.C. §§ 401, *et seq.*) and Title XVI of the Social Security Act (42 U.S.C. 1389, *et seq.*).  (R. 161-169.)  Both applications were denied on July 7, 2016 (R. 92-101), and Channell requested an administrative hearing (R. 104-105).

Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Channell's request for benefits in a decision dated February 20, 2018.  (R. 13-32.)  On October 23, 2018, the Appeals Council denied Channell's request for review.  (R. 1-7.)  Therefore, the hearing decision became the final decision of the Commissioner.  On December 20, 2018, Channell filed the instant action appealing the decision of the Commissioner.  (Doc. No. 1.)

---

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (Doc. No. 12.)

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).   Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).   The district court may remand a case to the

Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

## III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled. *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec*., 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that

---

[4] Although DIB and SSI are separate programs, the law and regulations governing claims under the respective programs are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining disability. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

significantly limit the claimant's ability to perform basic work activities.   20 C.F.R. § 404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id*.  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis.  At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  The ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c).  Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Channell has not engaged in substantial gainful activity since the alleged onset date of disability, March 22, 2016, and that he suffers from the following severe impairments which significantly limit his ability to perform basic work activities: inflammatory arthritis, chronic right foot pain, and obesity.  (R. 16-18.)  The ALJ concluded, however, that Channell's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 19.)

After consideration of the entire record, the ALJ determined that Channell retains the RFC to perform sedentary work[5] as defined in 20 C.F.R. § 404.1567(a) and 416.97(a), but not a "full range" of such work.  (R. 21-25.)  The ALJ found the following workplace limitations applicable to Channell:

> He can lift 10 pounds occasionally and less than 10 pounds frequently; carry 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours, stand for 2 hours, and walk for 2 hours; push or pull as much as he can lift or carry; operate foot controls with his right foot occasionally; climb ramps and stairs occasionally, and never climb ladders, ropes, or scaffolds; and balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and never crawl.  Channell can never work at unprotected heights, can work around moving mechanical parts occasionally, and operate a motor vehicle occasionally.   He can frequently respond appropriately to supervisors, coworkers, and the public.  His time off task can be accommodated by normal breaks.   He would need a cane for walking on uneven surfaces and for walking for more than 20 yards.

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

(R. 21.)

Following the testimony of the Vocational Expert ("VE"), the ALJ determined that Channell was precluded from performing any of his past relevant work.  (R. 25-26.)  The ALJ also concluded that Channell was not disabled as defined by the Act because his age, education, work experience, and RFC would allow him to make a "successful adjustment to other work that exists in significant numbers in the national economy."  (R. 27.)  The ALJ further concluded that Channell had not been under a disability from March 22, 2016, through February 20, 2018, the date of the ALJ's decision.  (R. 27.)

## V.    DISCUSSION

Channell presents one argument on appeal.  He argues that the Commissioner's decision should be reversed because the ALJ erred by failing to acknowledge or evaluate his case in accordance with Social Security Ruling ("SSR") 03-2p.  (Doc. No. 10 at 3.) Channell contends that the ALJ failed to identify his Complex Regional Pain Syndrome ("CRPS") as a medically determinable impairment at step two of the sequential evaluation process and failed to accord the proper weight to the opinions of his treating physicians, Drs. Herrick and Goldhagen.  (*Id*. at 13.)  Channell also contends the ALJ improperly discredited his pain testimony and "failed to address in any meaningful way Dr. Herrick's medical opinion regarding the severity of [his] pain" as required by SSR 03-2p.  (*Id*.) Channell urges the court to reverse the Commissioner's decision.  (*Id*.)

The Commissioner responds by conceding that the ALJ did not specifically address SSR 03-2p and arguing that the ALJ evaluated the medical evidence in the record, found that Channell had a severe impairment due to chronic right foot pain, and concluded that

7

Channell could perform sedentary work with additional limitations.  (Doc. No. 11 at 6.)

Without addressing whether the ALJ's silence on SSR 03-2p resulted in error, the

Commissioner argues that the ALJ's decision is supported by substantial evidence and

should be affirmed.  (*Id.* at 6-7.)

    A.  <u>CRPS/RSDS and Social Security Ruling 03-2p.</u>

    CRPS, also called Reflex Sympathetic Dystrophy Syndrome ("RSDS"),[6] is a

"chronic pain syndrome most often resulting from trauma to a single extremity."  SSR 03-

2p, 2003 WL 22399117, at *1 (Oct. 20, 2003).

> The most common acute clinical manifestations include complaints of
> intense pain and findings indicative of autonomic dysfunction at the site of
> the precipitating trauma ...  It is characteristic of this syndrome that the degree
> of pain reported is out of proportion to the severity of the injury sustained by
> the individual.

*Id.*  Because the pathogenesis of CRPS/RSDs is not entirely understood and because

CRPS/RSDS is not a Listed Impairment under the Regulations, the Social Security

Administration issued SSR 03–2p to explain its policies for developing and evaluating

disability claims based on CRPS/RSDS.  *Brooks v. Barnhart*, 428 F. Supp. 2d 1189, 1191

(N.D. Ala. 2006) (citing SSR 03-2p).

    SSR 03-2p recognizes CRPS/RSDS as a chronic pain syndrome that may progress

beyond the limb or body area initially involved and which manifests in intense pain that is

out of proportion to the precipitating injury.  *Brooks,* 428 F. Supp. 2d at 1192 (citing SSR

03-2p).  The Ruling also acknowledges that the pattern of the symptoms may not be wholly

---

[6] RSDS and CRPS are "synonymous and are used to describe a unique clinical syndrome that may
develop following trauma." SSR 03-2p, 2003 WL 22399117, at *1 (Oct. 20, 2003).

consistent due [to] the "transitory nature of the objective findings and the complicated diagnostic process involved." *Id.* at 1192 (quoting SSR 03–2p).

In addition, SSR 03-2p recognizes RSDS/CRPS as a medically determinable impairment "when it is documented by appropriate medical signs, symptoms, and laboratory findings[.]" "RSDS/CRPS may be the basis for a finding of 'disability.' Disability may not be established based on an individual's statement of symptoms alone." SSR 03-2p.

> For purposes of Social Security disability evaluation, RSDS/CRPS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs in the affected region at any time following the documented precipitant:
>
> > • Swelling;
> > • Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh);
> > • Abnormal hair or nail growth (growth can be either too slow or too fast);
> > • Osteoporosis; or
> > • Involuntary movements of the affected region of the initial injury.
>
> When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

*Id.*

An ALJ must follow the guidelines provided in SSR 03-2p when evaluating

a claim based upon RSDS/CRPS.  The ruling provides detailed instructions.

> Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment.  Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder…  [O]nce the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record…  [O]nce the existence of a medically determinable impairment has been established, an individual's symptoms and the effect(s) of those symptoms on the individual's ability to function must be considered both in determining impairment severity and in assessing the individual's residual functional capacity (RFC), as appropriate.  If the adjudicator finds that pain or other symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to perform basic work activities, a "severe" impairment must be found to exist.
>
> Proceeding with the sequential evaluation process, when an individual is found to have a medically determinable impairment that is "severe," the adjudicator must next consider whether the individual's impairment(s) meets or equals the requirements of the Listing of Impairments contained in appendix 1, subpart P of 20 CFR part 404.  Since RSDS/CRPS is not a listed impairment, an individual with RSDS/ CRPS alone cannot be found to have an impairment that meets the requirements of a listed impairment.  However, the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist…
>
> For those cases in which the individual's impairment(s) does not meet or equal the listings, an assessment of RFC must be made, and adjudication must proceed to the fourth and, if necessary, the fifth step of the sequential evaluation process…  [A]ll of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities.  Careful consideration must be given to the effects of pain and its treatment on an

individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.

Opinions from an individual's medical sources, especially treating sources, concerning the effect(s) of RSDS/CRPS on the individual's ability to function in a sustained manner in performing work activities, or in performing activities of daily living, are important in enabling adjudicators to draw conclusions about the severity of the impairment(s) and the individual's RFC… [A]ny information a medical source is able to provide contrasting the individual's medical condition(s) and functional capacities since the alleged onset of RSDS/CRPS with the individual's status prior to the onset of RSDS/CRPS is helpful to the adjudicator in evaluating the individual's impairment(s) and the resulting functional consequences.

If the adjudicator determines that the individual's impairment(s) precludes the performance of past relevant work (or if there was no past relevant work), a finding must be made about the individual's ability to perform other work. The usual vocational considerations must be followed in determining the individual's ability to perform other work.

*Id.* at *6-8.

   B.  The ALJ failed to acknowledge or evaluate Channell's case in accordance with Social Security Ruling 03-2p.

"District courts within the Eleventh Circuit routinely hold that the failure to assess the claimant's CRPS in accordance with SSR 03-2p undermines the ALJ's determinations with respect to medical opinion evidence, Plaintiff's credibility, and RFC determination." *Carroll v. Berryhill*, No. 3:15-CV-503-GMB, 2017 WL 559581 at *4 (M.D. Ala. Feb. 10, 2017) (citing *Volk v. Astrue*, No. 3:11–CV–533–J–TEM, 2012 WL 4466880 at *4 (M.D. Fla. Sept. 27, 2012)) (internal). In addition, "multiple district courts have held that when a plaintiff has been diagnosed with RSDS/CRPS by two or more physicians, a medically determinable impairment has been established and an ALJ's failure to address these diagnoses during the sequential evaluation process constitutes reversible error." *Paschal v. Berryhill*, No. 17 CV 5627, 2018 WL 4095100 at *4 (N.D. Ill. Aug. 28, 2018) (citing

cases).  Further, "[a]t least four district courts have found reversible error where an ALJ failed to address RSDS/CRPS and SSR 03-2p in the sequential evaluation process where only a single treating physician had diagnosed the plaintiff with RSDS/CRPS." *Paschal*, 2018 WL 4095100 at *4 (citing cases).

Here, Channell's medical records from Bone Joint Specialists PC and Center for Pain PC are replete with mentions of Channell's diagnosis of RSDS/CRPS.  (R. 276-308.)  Dr. Goldhagen, one of Channell's primary physicians, and Dr. Herrick both diagnosed Channell with CRPS/RSDS around 2016.  (R. 276-308, 309-314.)  Thus, at least two doctors diagnosed Channell with CRPS/RSDS.  Dr. Khdair, an internist, diagnosed Channell's status post multiple fractures to the right foot after the crushing injury in 2012 and post-surgery on the foot, as well as low back pain, depression, and hypertension.  (R. at 22-24.)   No evidence in the record appears to contradict the CRPS/RSDS diagnoses from Dr. Herrick and Dr. Goldhagen.

Notwithstanding the RSDS/CRPS diagnoses stated in Channell's medical records, the ALJ only briefly mentions Drs. Herrick and Goldhagen's diagnoses of CRPS/RSDS and states that she would give little weight to their opinions, as they gave no explanations for their opinions.  (R. at 23.)  However, "the mere mention of [CRPS/RSDS] diagnoses . . . does not equate to an evaluation of the intensity, persistence, and limiting effects of a claimant's CRPS as required by SSR 03-2p."  *Carroll*, 2017 WL 559581 at *5 (citing *Volk*, 2012 WL 4466480 at *4).

Moreover, under SSR 03-2p, an ALJ must accord great weight to the medical opinions of treating physicians, particularly those with a longitudinal perspective, because

the pattern of the symptoms may not be wholly consistent due to the "transitory nature of the objective findings and the complicated diagnostic process involved[.]" *Brooks,* 428 F. Supp. 2d at 1192  (citing SSR 03–2p).  SSR 03-2p states:

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to deference and may be entitled to controlling weight.  If we find that a treating source's medical opinion on the issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator will give it controlling weight.

*Brooks*, 428 F. Supp. 2d at 1192 (quoting SSR 03–2p).  Both doctors, Dr. Goldhagen, and Dr. Herrick, had treated Channell for the five years from the date of his injury through the date of his administrative hearing and diagnosed him with CRPS/RSDS.  The opinions of the treating physicians with their longitudinal perspective of Channell's health should have been evaluated in accordance with SSR 03-2p.

In addition, the ALJ made no mention of the discoloration, swelling, and hypersensitivity of Channell's foot noted by his physicians.  (R. 279-312).  Under SSR 03-2p, "once the record documents persistent limiting pain, then swelling and autonomic instability (*i.e.,* abnormalities in color) are among two of the factors that even when a single factor is documented at some point in time since the date of the precipitating injury, disability adjudicators *can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment*."  *Paschal*, 2018 WL 4095100 at *4 (internal quotations omitted) (emphasis in original).  Because Channell had two diagnoses of RSDS/CRPS by treating physicians coupled with long-documented severe pain with

13

swelling and abnormalities in color, his RSDS/CRPS on his foot should have been evaluated by the ALJ under SSR 03-2p.

Further, the ALJ erred in her evaluation of Channell's subjective complaints of pain. After reviewing the evidence, the ALJ in this case found that, although Channell's medically determinable impairments could reasonably be expected to cause his symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were inconsistent with the evidence in the record.   (R. at 25.) But a "patient's disproportionate, but nevertheless real, perception of pain is the hallmark of this neurological syndrome." *Brooks*, 428 F. Supp. 2d at 1193 (citing SSR 03-2p). "RSDS/CRPS is a disease diagnosed primarily based on subjective complaints, and the objective medical evidence, such as x-rays or laboratory tests, cannot be cited as a legitimate basis for rejecting plaintiff's subjective pain and limitations testimony." *Hunt v. Astrue*, No. EDCV 08-00299-MAN, 2009 WL 1519543 at *5 (C.D. Cal. May 29, 2009) (internal quotations omitted).  The ALJ here also noted that "the collective medical record shows [Channell's] treatment with medical providers has been conservative in nature through medication management . . ." (R. 24)  However, "a conservative degree of treatment does not warrant discrediting a plaintiff suffering from [CRPS/RSDS]." *Berstein v. Astrue*, Case No. 3:09-cv-17-J-34MCR, 2010 WL 746491 at *8 (M.D. Fla. Mar. 3, 2010).  Thus, the ALJ's rejection of Channell's subjective allegations of pain was likely a result of the ALJ's failure to properly evaluate Channell's CRPS/RSDS under SSR 03-02p.

Accordingly, the Court finds that the ALJ's failure to properly address RSDS/CRPS at step two in the sequential evaluation process and thereafter is clear error that requires

reversal and remand.  The ALJ's failure to address Channell's CRPS/RSDS under SSR 03-2p results in a failure to meet the substantial evidence standard and a failure to apply the proper legal standard.  *See Volk*, 2012 WL 44664480 at *5; *Paschall,* 2018 WL 4095100 at *4.  The ALJ's evaluation of the totality of the evidence is inconsistent with the instructions found in SSR 03-2p and reflects a need to consult with the ruling and, in accordance with its directive, properly evaluate Channell's CRPS/RSDS. *Id.* at *5.  "Because [Channell] bears the burden of proving that his RSDS/CRPS is a severe impairment at step two of the sequential evaluation process, the Court offers no opinion as to whether [he] has met his burden of proof based on the medical evidence in the record." *Scott v. Colvin*, CIVIL ACTION NO. 15-404-JWD-EWD, 2017 WL 1243154 at * 12 (M.D. La. 2017) (citation omitted).  Nevertheless, in the absence of any such determination by the ALJ, the Court cannot conclude that the Commissioner's decision is supported by substantial evidence and based on the proper legal standards.  Thus, this case is due to be remanded to the ALJ for further proceedings, where the ALJ is directed to (1) evaluate Channell's CRPS/RSDS in accordance with the provisions of SSR 03-2p, including an evaluation of the intensity, persistence, and limiting effects of his symptoms; (2) re-evaluate the opinion of his treating physicians Drs. Goldhagen and Herrick; (3) re-evaluate Channell's credibility; (4) reconsider Channell's RFC; and (5) conduct any other proceedings deemed appropriate.[7]

_____

[7] Channell argues that this court should reverse the ALJ's denial of benefits and award benefits outright. (Doc. No 10 at 13.)  In the Eleventh Circuit, a district court may remand for entry of an order awarding benefits if "it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Carroll*, at *534 (citing *Davis v. Shalala*, 985 F.2d 528, 534 (11th

## VI.    CONCLUSION

For the foregoing reasons, the Court finds that the decision of the Commissioner is neither supported by substantial evidence nor decided according to proper legal standards. Therefore, it is hereby

ORDERED that the decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is REMANDED for further proceedings consistent with this opinion.

A separate judgment will be issued.

DONE this 23rd day of July, 2021.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

---

Cir. 1993).)  Here, without impermissibly stepping into the role of factfinder and reweighing the evidence itself, the Court cannot conclude that the evidence establishes Channell's disability without a doubt.  *Id.*  Thus, remand is the proper remedy.